IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMERICAN DIGITAL SYSTEMS, doing business as ADVANCED COPY & PHOTO,<br><br>Plaintiff,<br><br>v.<br><br>BRYAN NELSON,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AWARDING A REASONABLE ATTORNEY'S FEE**<br><br>2:17-CV-293<br><br>Chief District Judge Robert J. Shelby |

Defendant Bryan Nelson published a wedding photo on his website. Plaintiff American Digital Systems (ADS) sued Nelson, claiming it had previously registered the wedding photo for copyright with the U.S. Copyright Office. Throughout the ensuing litigation, ADS took positions unsupported by the facts surrounding its purported registration with the U.S. Copyright Office. ADS also misstated the authorship of key emails. It alleged the U.S. Copyright Office sent it emails that, in fact, originated from Copyright Registry Online, a private company unaffiliated with the U.S. Copyright Office. ADS's counsel, F. Mark Hansen, repeated these misstatements in a sworn Declaration. By taking unreasonable positions while repeatedly and intentionally misstating key facts, ADS not only caused Nelson to incur unnecessary legal expenses but also harmed the proper functioning and integrity of the judicial process. For these reasons, which are detailed below, the court GRANTS Nelson's Motion for an Award of Attorney's Fees under 17 U.S.C. § 505.

**BACKGROUND**

The wedding photo at issue depicts Hansen's daughter kissing him on the cheek; he is wearing a boutonniere on his lapel and she is wearing a white wedding dress.[1] In October 2015, Hansen discovered the photo on Nelson's website, kingstonclan.com.[2] About a month later, in November 2015, Hansen observed the photo's absence from the website.[3] In March 2016, Hansen observed the wedding photo's reappearance on Nelson's website.[4]

In mid-December 2015, while acting on ADS's behalf, Hansen used Copyright Registry Online (CRO) to apply for a copyright registration of the photo.[5] CRO is a private company unaffiliated with the U.S. Copyright Office.[6] On December 18, 2015, Hansen received two emails from CRO and two emails from the U.S. Copyright Office, in the following order.

(1) <u>Thank You Email</u>

First, CRO sent an email with the subject heading "Copyright Registry Online – Thank You For Your Order!"[7] This email directed Hansen to submit the material he wanted to copyright.[8] In reply, he attached the file "551MilesAndVictoriaWed.jpg."[9]

---

[1] Dkt. 31-1, ex. 2.

[2] Dkt. 31 at ¶ 9; Dkt. 31-1 at ¶ 10.

[3] Dkt. 31 at ¶ 9; Dkt. 31-1 at ¶ 10.

[4] Dkt. 31 at ¶ 9; Dkt. 31-1 at ¶ 12.

[5] Dkt. 31 at ¶ 1; Dkt. 31-1 at ¶ 2; Dkt. 31-1, ex. 5.

[6] See Dkt. 26-1 and its accompanying exhibits, as well as Dkt. 31-1 at ¶ 2.

[7] Dkt. 31 at ¶ 2; Dkt. 31-1 at ¶ 3; Dkt. 31-1, ex. 1.

[8] Dkt. 31 at ¶ 2; Dkt. 31-1 at ¶ 3; Dkt. 31-1, ex. 1.

[9] Dkt. 31 at ¶ 3; Dkt. 31-1 at ¶ 4; Dkt. 31-1, ex. 2. The court assumes, without finding, that "551MilesAndVictoriaWed.jpg" is the wedding photo that appeared on Nelson's website.

(2) Confirmation of Receipt Email

Second, the U.S. Copyright Office sent an email with the subject heading "Confirmation of Receipt."[10] This email informed Hansen he could check the status of his claim via the Copyright Office's website using reference number 1-2969497301.[11]

(3) Copyright Service Request Reply Email

Third, CRO sent an email with the subject heading "RE: Your Copyright . . . your service request number: 1-2969497301."[12] That email stated,

> Your work has been registered for copyright, your file(s) have been uploaded, and the file submission has been completed . . . Most online filers should receive a certification within eight months. Many will receive their certificates earlier . . . Whatever time is needed to issue a certificate, the effective date of registration is the day the Copyright Office receives a complete submission in acceptable form . . . **Save this number for tracking the progress of your Copyright request:** 1-296949730.[13]

(4) Acknowledgment of Uploaded Deposit Email

Fourth and finally, the U.S. Copyright Office sent an email with the subject heading "Acknowledgment of Uploaded Deposit."[14] That email stated the "551milesandvictoriawed.jpg" file was "successfully uploaded for service request 1-2969497301."[15]

On April 14, 2017, while represented by Hansen, ADS sued Nelson for infringing its copyrighted photo, i.e., the wedding photo.[16] In its Complaint, ADS stated, "ADS has registered the [wedding photo] for copyright with the United States Copyright Office. The copyright

---

[10] Dkt. 31 at ¶ 4; Dkt. 31-1 at ¶ 5; Dkt. 31-1, ex. 3.

[11] Dkt. 31 at ¶ 4; Dkt. 31-1 at ¶ 5; Dkt. 31-1, ex. 3.

[12] Dkt. 31 at ¶ 5; Dkt. 31-1 at ¶ 6; Dkt. 31-1, ex. 4.

[13] Dkt. 31-1, ex.4 (emphasis in original); *see also* Dkt. 31 at ¶ 5; Dkt. 31-1 at ¶ 6.

[14] Dkt. 31-1, ex. 5; *see also* Dkt. 31 at ¶ 6; Dkt. 31-1 at ¶ 7.

[15] Dkt. 31-1, ex. 5; *see also* Dkt. 31 at ¶ 6; Dkt. 31-1 at ¶ 7.

[16] Dkt. 3.

request tracking number is 1-2969497301."[17] ADS sought injunctive relief, attorney's fees, actual damages, and $100,000 in statutory damages.[18]

Nelson responded to the lawsuit by voluntarily removing the photo from his website and moving to dismiss the Complaint.[19] He cited Tenth Circuit precedent holding a plaintiff can only bring a copyright infringement suit after "a copyright is registered, and such registration occurs when the Copyright Office approves the application."[20] He further cited Tenth Circuit precedent rejecting the proposition a work is registered upon submission of a copyright request.[21] Because ADS failed to allege any facts supporting a reasonable inference the Copyright Office actually approved ADS's copyright registration request, Nelson argued dismissal was warranted.[22] He also argued dismissal was warranted because ADS failed to plead statutory or actual damages.[23]

Rather than oppose Nelson's Motion, ADS amended its complaint.[24] In its Amended Complaint, ADS misstated the authorship of key emails. First, ADS alleged "the Copyright Office sent ADS's agent an email that begins: 'Thank You For Your Order! Now . . . all you need to do is send in the material you would like to copyright.'"[25] But CRO sent that email, not the Copyright Office.[26] Indeed, CRO sent that email to Hansen, the lawyer who prepared the

---

[17] *Id.* at ¶ 11.

[18] *Id.* at ¶¶ 20, 21, 25.

[19] Dkt. 17 at 2; Dkt. 18 at ¶ 22.

[20] Dkt. 17 at 2 (citing *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1203-04 (10th Cir. 2005)).

[21] *Id.* at 2-3 (citing *La Resolana Architects*, *PA*, 416 F.3d at 1205).

[22] *Id.* at 3.

[23] *Id* at 3-4.

[24] Dkt. 18.

[25] *Id.* at ¶ 13.

[26] Dkt. 31 at ¶ 2; Dkt. 31-1 at ¶ 3; Dkt. 31-1, ex. 1.

Amended Complaint.[27]  Second, ADS alleged "[T]he Copyright Office responded . . . with a written notification that "**Your work has been registered for copyright.**"[28]  But CRO, not the Copyright Office, sent that email to Hansen.[29]  In its Amended Complaint, ADS continued to seek the same injunctive relief, attorney's fees, and actual damages but raised its demand for statutory damages to $150,000.[30]

    Nelson again moved to dismiss.[31]  He reasserted that ADS failed to identify any registered work, and he requested the court take judicial notice of the Copyright Office's online records documenting that the photo was not registered until May 2, 2017.[32]  ADS, in opposition, continued to misstate the authorship of the Thank You and Copyright Service Request Reply emails.[33]  Hansen repeated those misstatements in his sworn Declaration.[34]  ADS also disputed the significance of the Copyright Office's records showing a May 2, 2017 registration date.[35]  At bottom, ADS alleged the Copyright Office's online records conflicted with the emails it received from the Copyright Office; and it argued the court was required to resolve the conflict in favor of ADS at the motion to dismiss stage.[36]  Nelson replied with evidence demonstrating CRO sent the Thank You and Copyright Service Request Reply emails.[37]

---

[27] Dkt. 31-1 at ¶ 3; Dkt. 31-1, ex. 1.

[28] Dkt. 18 at ¶ 15 (emphasis in original).

[29] Dkt. 31 at ¶ 5; Dkt. 31-1 at ¶ 6; Dkt. 31-1, ex. 4.

[30] Dkt. 18 at ¶¶ 30, 35; Audio record of May 5, 2018 hearing at 21:35-21:40 ("We still have claim for actual damages").

[31] Dkt. 20.

[32] *Id.* at 3.

[33] Dkt. 23 at 5-6.

[34] Dkt. 23-1 at ¶¶ 2-4.

[35] Dkt. 23 at 5-6.

[36] *Id.*

[37] *See* Dkt. 26-1.

Before the court ruled on Nelson's Second Motion to Dismiss, ADS filed a Motion for Partial Summary Judgment, as well as a new Declaration, in which Hansen changed his sworn testimony.[38] For the first time, ADS and Hansen disclosed CRO sent the Thank You and Copyright Service Request Reply emails.[39] Hansen revealed he used "Copyright Registry Online to enter [copyright registration information,] which submitted the information to the U.S. Copyright Office."[40] No longer did he maintain the Copyright Office sent him an email that the wedding photo had been registered. Instead, he stated, "I received an email . . . informing me . . . Your work has been registered for copyright."[41] Nonetheless, ADS insisted the wedding photo was registered in December of 2015 because the Copyright Office was "equitably estopped from claiming otherwise."[42]

During a May 15, 2018 hearing on Nelson's Second Motion to Dismiss and ADS's Motion for Summary Judgment, the court did not analyze the legal ramifications of ADS's misstatements. Rather the court analyzed three conspicuous reasons ADS's claims failed. First, the court dismissed with prejudice any claims for statutory damages or attorney's fees because it was undisputed any infringement commenced before the alleged registration; and thus copyright law foreclosed the awarding of statutory damages or attorney's fees.[43] Second, the court dismissed without prejudice ADS's claim for actual damages because ADS failed to allege any facts supporting a reasonable inference that ADS suffered actual damages.[44] Third, the court

---

[38] *See* Dkt. 31; Dkt. 31-1.

[39] Dkt. 31-1 at ¶¶ 3, 6; Dkt. 31-1, exs. 2, 4.

[40] Dkt. 31-1 at ¶ 2.

[41] *Id.* at ¶ 6.

[42] Dkt. 36 at 3.

[43] Dkt. 42 (citing 17 U.S.C. § 412).

[44] Dkt. 42.

dismissed without prejudice ADS's claim for injunctive relief because there was no allegation of ongoing infringement, and thus the claim was moot.[45]

Nelson, as the prevailing party, requested a reasonable attorney's fee.[46] The court denied Nelson's request insofar as it was premised on ADS's statutory damages claim being frivolous: ADS took the reasonable position that Nelson ceased his initial infringement long enough that, when he resumed infringement, he infringed anew.[47] In other words, the court ruled ADS's statutory damages claim was not frivolous because the Tenth Circuit had not ruled on the theory of infringement advanced by ADS.[48] The court stated insofar as the request for attorney's fees was based on other arguments, it was "premature and should be evaluated if at all on the basis of a full record."[49] The court thus denied Nelson's request for an attorney's fee without prejudice "with respect to alternative bases."[50] Although afforded the opportunity to amend its complaint within fourteen days,[51] ADS did not amend its pleading to sufficiently allege actual damages or ongoing infringement. The court closed the case on June 5, 2018.[52] Before the court now is Nelson's renewed Motion for a reasonable attorney's fee.[53]

---

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] Dkt. 43.

[53] Dkt. 49.

## LEGAL STANDARD

A court may award a reasonable attorney's fee to the prevailing party in a copyright infringement action.[54] A multi-factor test, derived from the Supreme Court's decision in *Fogerty v. Fantasy, Inc.*, guides a court in the exercise of its discretion.[55] Factors the court should consider include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[56] Among these factors, the objective reasonableness of the losing party's position should be given substantial weight.[57] By giving substantial weight to this factor, the legal system "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation."[58] Yet the objective reasonableness factor is not dispositive. "[A] court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses."[59] Ultimately, in applying any factor, the court must remain faithful to the purpose of the Copyright Act, which is to enrich the general public through access to creative works, by "striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work."[60]

---

[54] 17 U.S.C. § 505.

[55] 510 U.S. 517, 534 n.19 (1994).

[56] *Id.* (internal quotation marks omitted) (citing *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 156 (3d Cir. 1986)).

[57] *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1983 (2016).

[58] *Id.* at 1986.

[59] *Id.* at 1979.

[60] *Id.* at 1986 (citing *Fogerty*, 510 U.S. at 526); *Fogerty*, 510 U.S. at 534 n.19.

**ANALYSIS**

After scrutinizing the full and complete record of this case, the court finds ADS (I) maintained suit based on objectively unreasonable positions, (II) prolonged, complicated, and jeopardized the just resolution of this litigation by serially and intentionally misstating the authorship of key emails, and (III) otherwise harmed the proper functioning and integrity of the judicial process. Accordingly, the court awards a reasonable attorney's fee.

**I. ADS maintained suit based on an objectively unreasonable position.**

ADS maintained suit based on at least two objectively unreasonable positions. First, in its original pleading, ADS sought actual damages without alleging a commercial use of the wedding photograph by Nelson or identifying any commercial injury that ADS suffered.[61] And it maintained that position in an amended pleading, even after it was challenged for failing to identify any basis for actual damages.[62] Thus, not once but twice, ADS unreasonably sought actual damages.

Second, ADS unreasonably sought statutory damages and a reasonable attorney's fee because it lacked any factual basis from which to infer the Copyright Office approved its registration application. To seek statutory damages or a reasonable attorney's fee for copyright infringement, a plaintiff must have actually registered its copyright.[63] Such registration occurs when the Copyright Office approves a copyright registration application.[64] Here, ADS argues

---

[61] *See* Dkt. 3 at ¶ 20.

[62] ADS represented to the court that the Amended Complaint maintained a claim for actual damages. Audio record of May 5, 2018 hearing at 21:35-21:40 ("We still have claim for actual damages"); s*ee* Dkt. 18 at ¶¶ 29-30.

[63] 17 U.S.C. § 411; *see La Resolana Architects, PA*, 416 F.3d at 1200.

[64] *La Resolana Architects, PA*, 416 F.3d at 1203-04.

emails from the U.S. Copyright Office and CRO supported an inference the Copyright Office approved its registration application.

But every email from *the Copyright Office* indicated ADS's application was not yet approved. The Confirmation of Receipt email does not reasonably support the inference the Copyright Office approved ADS's application. That email directed Hansen to send in the material he wanted to register at the Copyright Office's website, and it informed him, "[y]ou may *check the status* of this claim via [the Copyright Office's website] using this number 1-2969497301. If you have questions or need assistance, Copyright Office contact information can be found at http://www.copyright.gov/help/ index.html#general."[65] The Acknowledgment of Uploaded Deposit email also indicated ADS's application was not yet approved. That email acknowledged the submission of ADS's "registration claim" and informed Hansen that the wedding photo was "successfully uploaded *for service reques*t 1-2969497301."[66]

Likewise, rather than support an inference the Copyright Office had approved ADS's registration application, every email *from CRO* indicated the Copyright Office had not yet approved ADS's application. True, CRO thanked Hansen for his order in its Thank You email, informing him "all you need to do is send in the material you would like to copyright."[67] And in its Copyright Service Request Reply email, CRO stated, "[y]our work has been registered for copyright, your file(s) have been uploaded, and the file submission has been completed."[68] Critically, however, CRO added a timeline for the receipt of a registration certificate, providing,

---

[65] Dkt. 31-1, ex. 3 (emphasis added).

[66] Dkt. 31-1, ex. 5 (emphasis added).

[67] Dkt. 31-1, ex. 2.

[68] Dkt. 31-1, ex. 4.

> Processing Time for E-Filing: **Most online filers should receive a certificate within eight months.** Many will receive their certificates earlier.
>
> Processing Time for Form CO and Paper Forms: Most of those who file on these forms should receive a certificate up to 13 months of submission. Many will receive their certificates earlier.
>
> Note: Whatever time is needed to issue a certificate, the effective date of registration is the day the Copyright Office receives a complete submission in acceptable form. You do not need to wait for a certificate to proceed with publication.
>
> **Save this number for tracking the progress of your Copyright request: 1-2969497301**[69]

By informing Hansen he should receive a certification of registration within eight months of submitting his application and suggesting he track the progress of his copyright request, the CRO Reply email made it clear—on December 18, 2015—the Copyright Office had not yet approved ADS's application.

Furthermore, Hansen never alleged he obtained a Certificate of Registration, even though he filed suit on April 14, 2017, well over eight months after the receipt of the Copyright Service Request Reply email. Even when repeatedly confronted with the Copyright Office's online records, which indicated a May 2, 2017 registration date, [70] Hansen did not seek to rebut those online records with a registration certificate. The most likely reason for Hansen's reluctance is

---

[69] Dkt. 31-1, ex. 4 (emphasis altered).

[70] Dkt. 20 at 2 ("**The Court Should Take Judicial Notice of the Copyright Office's Records that Show that Photo was not Registered until May 2, 2017.**") (emphasis in original); Dkt. 26 at 2 ("[T]he court should take judicial notice of the Copyright Office's official and public records that show the photo was registered in May 2017, more than one year after the alleged infringement began."); Dkt. 28 at 1-2 ("Plaintiff now asks this Court not to consider materials proving that the emails Plaintiff asserts are official records from the Copyright Office are not actually from the Copyright Office, but rather a commercial service provider."); Dkt. 35 at 9 ("In support of its request that this Court contradict the U.S. Copyright Office's official records, Plaintiff attaches emails purporting to show that Plaintiff submitted an application, but fails to provide a copy of that application or any explanation as to why the U.S. Copyright Office lists the registration date as May 2, 2017. Plaintiff, therefore, has failed to meet its burden to prove a registration date earlier than the official registration date determined by the Register of Copyrights."); Dkt. 49 at 7-8; Dkt 54 at 8.

that the registration certificate, and more specifically the date printed on it, would not support the arguments he previously made and would lay bare the unreasonableness of his prior positions. Indeed, given the evidentiary value of a registration certificate,[71] the court can identify no other reason Hansen would withhold the document. In light of the full record, the court concludes ADS's maintained suit for statutory damages and a reasonable attorney's fee based on two objectively unreasonable positions.

## II. By serially and intentionally misstating the authorship of key emails, ADS prolonged, complicated, and jeopardized the just resolution of this litigation.

ADS prolonged this litigation by repeatedly misstating the Copyright Office authored emails that, in truth, CRO authored.[72] In response to Nelson's first Motion to Dismiss, ADS postponed the dismissal of its claims by introducing and relying on misstatements in its Amended Complaint.[73] In response to Nelson's second Motion to Dismiss, ADS again postponed dismissal by repeating those misstatements, alleging the Copyright Office's online records conflicted with the emails from the Copyright Office, and arguing the court was required to resolve that conflict in favor of ADS at the motion to dismiss stage.[74]

Based on the record before it, and its interactions with counsel during hearings, the court finds Hansen's and ADS's misstatements were intentional. Their mistruths befogged this litigation and thwarted procedural mechanisms designed to safeguard individuals from the stress and expense of unnecessarily defending against futile litigation. As a result, Nelson unfairly

---

[71] The U.S. Copyright Office issues a Certificate of Registration upon approval of a copyright application. "A certificate of registration validly obtained from the Copyright Office within five years of first publication (or at any time for unpublished works) constitutes prima facie evidence of the originality of the work and of the facts stated therein (e.g., that the claimant is the author, that the work was published on X date in X country)." William F. Patry, 3 Patry on Copyright § 9:7 (Sept. 2018 Update).

[72] See previous discussion on pages 1-7.

[73] Dkt. 18 at ¶¶ 13, 15.

[74] Dkt. 23 at 2-8.

incurred legal expenses defending against futile claims.[75] Their mistruths also wasted judicial resources, necessarily delaying the resolution of other cases with merit, while also threatening an erroneous ruling by the court. In total, their mistruths prolonged, complicated, and jeopardized the just resolution of this litigation.

## III.   Other factors weigh in favor of an award of a reasonable attorney's fee.

ADS's claims for actual damages, $150,000 in statutory damages, and attorney's fees kept Nelson in court. Absent these claims, it is doubtful he would have defended against the injunction claim: indeed, Nelson removed the photograph from his website in response to ADS's first pleading.[76] ADS's misstatements also kept Nelson in court by obscuring the futility of ADS's claim for some time. Nelson ultimately prevailed in his suit but gained nothing monetarily; instead, he incurred legal expenses. An award of a reasonable attorney's fee will appropriately compensate Nelson for the legal expenses he incurred in unveiling the untruthfulness of ADS's factual positions and defending against ADS's futile suit. Such an award will also deter similar conduct in the future. Finally, an award of attorney's fees will promote the purpose of the Copyright Act by encouraging parties and their counsel to read the Act and controlling law, consider facts, and take legally viable positions.[77]

---

[75] See Dkts. 20, 21, 26, and 35, as well as 26-1 and its accompanying exhibits.

[76] Dkt. 17 at 2.

[77] A good-faith motivation, on the part of ADS and Hansen in bringing suit, would not change the court's decision on this Motion. Therefore, the court assumes, without finding, that ADS and Hansen brought suit for a proper purpose.

## CONCLUSION

In light of the foregoing, and after careful consideration of Nelson's accounting of attorney's fees, the court concludes an award of $48,564.00 is reasonable.[78] The court GRANTS Nelson's Motion.[79] ADS is ORDERED to pay Nelson his legal fees no later than April 30, 2019.

SO ORDERED this 30th day of January, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[78] The court makes this finding using a lodestar method that considers local hourly rates and the number of hours a reasonable attorney would have expended in this litigation. The local hourly rates of Nelson's counsel reasonably varied between approximately $200 and $300 per hour. And his counsel expended a reasonable amount of time on this litigation, just under 200 hours in total. *See* Dkt. 49, ex.4; Dkt. 52, ex. 2.

[79] Dkt. 49.